### West v. West.

(Decided April 26, 1929.)

DENHARDT & HUNTSMAN for appellant.

G. D. MILLIKEN for appellee.

FINN & SIMS for Hazel L. Wood.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On August 31, 1927, appellant, Edith P. West, sued appellee, J. Lewis West, for divorce on the ground, among others, of cruel and inhuman treatment. Appellee filed an answer and counterclaim denying the allegations of the petition and asking for a divorce on the ground of abandonment. The lower court granted a divorce to appellant and awarded her alimony in the amount and in the manner hereinafter related. The wife has appealed and complains of the allowances for alimony and attorneys' fees, and also of certain statements in the chancellor's written opinion which she construes as a reflection upon her, unjustified by the record.

The judgment of divorce cannot be disturbed whatever may have been the reasons assigned therefor by the lower court. We may say in passing that we do not construe the statements complained of as possessing the derogatory meaning placed upon them by counsel for appellant. The chancellor clearly did not intend to question the chastity of appellant, nor to charge that she was derelict in any marital duty. He merely stated that she had acquired the habit of attending social functions which held no attractions for her husband and that their habits and tastes had become so divergent as to render them wholly incompatible. A careful reading of the evidence discloses no conduct on the part of appellant calling for the slightest criticism, except a few unsupported statements and charges by appellee, to which we give no credence, in view of his own indefensible conduct and his proven misstatements relative to other matters.

These parties were married on November 12, 1905, when he was 21 years of age and she was under 16. He was employed as a clerk by the Louisville & Nashville Railroad Company and was receiving a salary of $30 a month. He continued to work for the railroad company

for 10 or 12 years, when he engaged in the retail coal business. Neither of them owned any property at the time of their marriage. They have two children, a son, Stanley, now 22 years of age, and a daughter, Mildred, now 18 years of age. So far as the record shows, they lived together happily until 1923 and by their united efforts had accumulated an estate of nine or ten thousand dollars. During all of this time appellant did the work about the house, including cooking, washing, and sewing and was a faithful and economical wife.

Their domestic troubles began early in the year of 1924, after appellee had become enamored of Mrs. Hazel L. Wood, a widow then 23 years of age. Thereafter he lost all interest in his family and devoted practically all of his time and attention to Mrs. Wood. He denied that any relations other than that of employer and employee existed between him and Mrs. Wood, she being an employee in his office, and he testified that he never met her until she came to his office and was employed in June, 1924. He also denied that he had ever visited her at the home of her aunt, Mrs. M. N. Crane, who resided about 15 miles from Bowling Green, and with whom she made her home for several months prior to going to work at his office. Mrs. Crane and her husband both testified that appellee came to their home during Christmas week, 1923, and made repeated visits to their home during the spring of 1924 while Mrs. Wood was there. He represented to them that his name was Marion Lawrence and that he was an adjuster for an automobile company. Mrs. Crane, learning of the gossip concerning her niece and appellee, went to Bowling Green and identified appellee as the person who had visited in her home under the name of Lawrence. The father of Mrs. Wood, who resided several miles from Bowling Green, testified that appellee had been in his home on numerous occasions with his daughter and that he represented that his name was Marion Lawrence.

It is unnecessary to detail the evidence concerning the relations between appellee and Mrs. Wood and concerning his treatment of his wife and children, but it is sufficient to say that is was ample to support the chancellor's decree granting appellant a divorce.

A few years after their marriage appellee purchased a house and lot for $3,912.50. He made an initial payment of $212.50; assumed a debt against the property for $2,-

000, and for the balance of $1,700 he executed 68 notes for $25 each. The debt and deferred payments were paid out of appellee's salary and out of rent received from roomers in the house. The property when it was purchased was deeded jointly to appellant and appellee.

The lower court found that appellee had paid the consideration for the home and adjudged it to him as required by section 425 of the Civil Code, subject to appellant's claim for alimony. It is urged by appellant that this was error since she had paid a valuable consideration for her one-half interest in the property by applying on the purchase price the money received as rent for rooms. The facts in Duke v. Duke, 198 Ky. 173, 248 S. W. 500, are very similar to the facts in this case, and that case is decisive of the question presented here. The judgment of the chancellor being in accordance with the opinion in the Duke case, it cannot be disturbed in this respect.

The chancellor found that the value of the home was approximately $6,500, and that there were judgment debts against appellee amounting to $1,049.63, other than one of $853.60 in favor of Mrs. Hazel Wood, and awarded appellant one-third of the proceeds of the sale of the home after the payment of the indebtedness of $1,049.63, all of the household furniture, and also one-half of the proceeds of all personal property that had been attached and which had not been consumed in the payment of a pendente allowance of $60 a month, made on September 1, 1927. Appellee owned two automobiles, and the chancellor awarded appellant one of these. In addition to the above allowance out of appellee's estate as alimony, an allowance was made to appellant of $20 a month until further order of the court and also the sum of $25 a month for the support of the daughter until further order of the court. Appellant was allowed $150 as a reasonable fee to her attorneys. It will thus be seen that the court awarded to appellant one-third of appellee's real estate, more than one-half of his personalty, and, in addition, made her an allowance of $20 a month for her support and $25 a month for the support of the daughter.

Some complaint is made that appellee owned other property not referred to in the judgment, including his coal business, which he claims to have sold and transferred to Hazel L. Wood for the consideration of $50. This sale was undoubtedly collusive, as was the judgment for

$853.60 obtained against him by Mrs. Wood, but his coal business had dropped off until it was of little, if any value and the court properly disregarded the judgment of Mrs. Wood in arriving at the amount of alimony to be paid. The costs in the action will be considerable, and, after the payment of these and his attorneys' fees, appellee will have left but a small estate.

The appellant was allowed $150 as attorneys' fees, which she seeks to have increased. Considering the other allowances made to appellant and the large amount of costs that appellee will be compelled to pay, in addition to his own attorneys' fees, we deem the amount allowed sufficient under the circumstances.

In view of all the facts, we are of opinion that the chancellor has made a fair and equitable division between the parties of their property rights. Wherefore the judgment is affirmed.