## Woford v. Woford.

(Decided March 19, 1937.)

J. C. CLOYD and HAROLD STUCKER for appellant.

ANDREW W. NICHOLS for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

On April 4, 1935, appellant filed a petition seeking divorce and alimony. The parties were married in February, 1920, and lived contentedly together until some time prior to March 28, 1935, when the eternal triangle interrupted. At the time of their marriage appellant had no property; appellee had saved from

his labors as a farm tenant a nice sum. By their joint efforts, up to the time of the rift in their domestic life, they had accumulated sufficient funds for the purchase of two pieces of real estate, and had also acquired some personal property.

As grounds for relief from the bonds of matrimony, appellant charged such cruel and inhuman treatment, and threatened and attempted injury by appellee as indicated an outrageous temper, to such extent that she feared bodily harm at his hands if she should continue to live with him. She specifically charges that appellee falsely accused her of improper relations with another man; that on March 28, 1935, he threatened to kill her if she did not leave the home, and also warned her she would be killed if she returned.

Such other allegations as are required by the statutes controlling the procedure in divorce actions were made. In her prayer she asked for divorce ab vinculo, $20 per week allowance pendente lite, a final allowance of alimony in the sum of $5,000, an order restoring individual property, and finally an order to restrain appellee from rendering her bodily harm.

Appellee answered denying the allegations of the petition and by way of counterclaim charged that within the two years last past, appellant had been guilty of such lewd and lascivious conduct as proved her to be unchaste. In regard to property rights, he alleged that after their marriage and by reason thereof, without any other consideration, he caused to be conveyed to himself and appellant jointly two tracts of land described in his answer, which together contained something over 100 acres, costing $8,250, all of which purchase price was paid by him. In his prayer for relief he asked that appellant's petition be dismissed; that he be adjudged an absolute divorce; and that appellant be required to convey to him her claimed title to the real estate described.

Appellant replied denying the allegations of that pleading and further pleaded that the funds which went into the purchase of the land were earned by both parties. She said that she "cooked, washed, kept house, raised chickens, milked cows, worked in the fields, stripped tobacco, cooked for the hired help on the

farm," and that the proceeds of her labors, merged into a common fund, were used to pay for the land. She also pleaded that $500 of this purchase money she had received from her father's estate.

By another amended answer and cross-petition, appellee, after denying the allegations as to the amount of personal property, cash on hand, etc., which he was charged to possess, denied that appellant paid any part in the purchase of the real estate. The issues were completed, and thereafter considerable proof was taken before the court's commissioner.

On June 17, 1936, the commissioner made a comprehensive report in which he expressed the opinion that appellee had failed to establish his charge of misconduct, and appellant had sustained her charge of statutory cruelty. He recommended to the court a dismissal of appellee's cross-pleading, and finding no "like fault" on the part of appellant recommended that she be granted an absolute divorce and allowed a lump sum of $1,200, by way of alimony. He also recommended that certain personal property set out in a schedule be restored to her and that she be required to execute deed for her claimed interest in the real estate, retaining a lien. to secure the payment of the allowance for alimony.

Appellant filed exceptions to the report, asserting that the allowance of $1,200 alimony was inadequate; that the commissioner had refused to allow her $80, which she had loaned to her husband, and objecting to an allowance of only $300 for attorney's fee, taking the position that it should be fixed at $750. On January 29, 1936, the court overruled appellant's exceptions in each particular and decreed her divorce. Later a motion was made by appellee to set aside the order and judgment for the purpose of affording him opportunity to file exceptions to the report. This motion was sustained. Appellant by way of supplemental exceptions objected to so much of the report as required her to execute a quitclaim deed to the real estate, and in so far as the report did not direct the return of certain mentioned personal property.

Upon resubmission on all the exceptions, the court by judgment and a subsequent amended judgment, re-

citing the filing of appellee's exceptions, sustained same in part, overruled appellant's exceptions, granted appellee an absolute divorce, and directed that each party restore to the other such property not disposed of at the time of suit, which had been obtained directly or indirectly by reason of marriage. Appellant was directed to convey to appellee the undivided interest in the real estate described. An allowance was made for attorney's fees, and appellee was directed to restore to appellant personal property set out in item No. 2 of the commissioner's report. To so much of the judgment as overruled the commissioner's allowance of $1,200 alimony and directed her to quitclaim to the real estate, and dismissed her petition, appellant objected and excepted. There are the matters now presented to us for review.

Appellant in seeking relief by way of a divorce combined the grounds upon which a wife may be entitled to such relief ''when not in like fault,'' as set out in subsections 2 and 3 of section 2117, Ky. Stats.

At the time of their marriage, appellant was twenty years of age and appellee about forty. The separation occurred on March 29, 1935. According to appellant's testimony and that of most of her witnesses, their married life had been peaceable and happy up to the March 29th, episode. According to appellee it had been so up until a short time prior to the date above mentioned, when he purchased an automobile for his wife in 1934.

On the date of the separation the husband came home, as he claims unexpectedly, and finding the ''third party'' in the house he procured his shotgun and shot twice at the alleged intruder, one shot taking effect. Immediately after this, he ordered the wife to leave his home and not return, threatening to shoot her if she failed to leave or attempted to return. She left and as far as the record discloses has never returned because of the threat and a fear of its being carried out, which fear from the testimony seems to be well founded. During this trouble at the home and since, and from appellee's testimony prior thereto, he had accused her of misconduct. He says he had warned her on several occasions that her continued association with the third party would inevitably lead to trouble.

There can be no doubt that appellee's action in threatening appellant and forcing her to leave home was, to say the least, a strong intimation that he believed her guilty of misconduct. We have frequently held that unfounded charges of lewd conduct against an innocent wife is evidence of cruel and inhuman treatment on the part of the husband. Such charges must be made in the best of faith and upon reasonable grounds. Grove v. Grove, 239 Ky. 32, and a list of cases cited on page 40, 39 S. W. (2d) 193, 196.

There is no doubt but that the threat on the part of the husband indicated a display of temper, and, as we have said, was sufficient to put appellant in fear of danger to herself. The question would naturally arise as to whether or not, according to the testimony of appellee, upon his unexpected appearance at home finding, as he says, a man's hand or fingers grasping the outside of a closet door and the wife rearranging the bed clothing would be sufficient to justify him in losing his temper momentarily. We shall not undertake to answer this question for him. It is sufficient for us to say that there is a total lack of proof on the part of appellant which would indicate cruel or inhuman treatment, outrageous temper, or the grounds for fear of bodily harm up until the time of this rift. She agrees that they had led a very orderly, contented, life. Appellant was a hard worker; so was appellee. They were seemingly working together, sharing their burdens in a way which was commendable. They were prosperous, and outside of one suggestion that at one time appellant "went on a spending spree" she was economical and thrifty.

We do not agree with the contention that the court erred in dismissing her petition. It is true that if it had developed that the action of the husband on the day of the separation was unwarranted, or his intimations had been unfounded, not made in good faith, or not based on reasonable beliefs appellant might complain. However, as we read the record, and we have complied with the request of appellee's counsel and read the complete transcript, we cannot escape the conclusion that there were ample grounds upon which to base the belief existing in the mind of appellee on March 29, 1935, and while it is not for us to justify

his attempt or threat to take human life, the question of provocation was one addressed to him at the time.

It would serve no useful purpose and unnecessarily extend this opinion for us to give in detail the evidence upon which the chancellor below denied relief to appellant and on the cross-pleading decreed a divorce to appellee. The finding of the court below was by no means based on the testimony with relation to what occurred on March 29th. There are several instances related in the testimony of acts on appellant's part which we think fully justify the chancellor's decree in both respects. These acts are vehemently denied by appellant and others who were charged to have been participants. Some that appear at first blush to be beyond reasonable belief, but when we find in the record witnesses testifying to condemning facts are men and women of mature age, whose reputations for veracity are not only not challenged—except in brief—but are shown by ample proof to be persons entirely worthy of belief, it is sufficient for us to conclude that the chancellor's decree was fully borne out by the facts as developed.

Coming to the contention that appellant should not be required to convey to appellee the undivided interest in the two tracts of land, we have given the evidence with relation to the accumulation of property by their joint efforts full consideration. As shown by the evidence, and admitted by appellee, appellant was a good housewife; she was exceedingly industrious, and worked hard. There is no doubt that much of the consideration paid for the two tracts of land embraced money produced by appellant's activity in raising and selling poultry and farm produce, thus enabling appellee to more promptly pay for the land.

While it is shown that appellant received the sum of $512 from her father's estate when she reached the age of twenty-one, and claims in her pleading that this went in payment for the land, she is unable to show by satisfactory proof that this is true. It is fairly shown that she used some portion of this money, around $400, for the purchase of wearing apparel for herself and her husband and in house furnishing, and it might have been argued that by thus spending her money the husband was relieved of the purchase of

what she claims were necessities, and thereby enabled to pay much more on the land. However this may be, and while appellant claims this in her pleading, the specific item was not made the subject of exception by appellee. Nor did the court make any ruling on this phase of the case, unless it was intended in the judgment to be included in the general and specific orders of restoration of property.

The court's order directing appellant to quitclaim as to the two tracts of land seems to us to have been correct. In the recent case of Fain v. Minge, 241 Ky. 131, 43 S. W. (2d) 504, the question arose as to whether the services rendered by a wife which resulted in accumulating a fund used to purchase a home, gives her a legal right therein; in other words, whether or not the fact that the wife helped to accumulate and save the funds was a valuable consideration within the meaning of section 425 of the Civil Code of Practice, which is the authority upon which rests the duty of the court to order restoration. We decided in the case just referred to that the husband is entitled to the services of the wife and that the rendition of household services was not "valuable consideration." This opinion was approved in Duke v. Duke, 198 Ky. 173, 248 S. W. 500; West v. West, 229 Ky. 125, 16 S. W. (2d) 781.

We note in the bill of exceptions that the contention is made that the court erred in not allowing appellant the sum of $80 which she alleges she loaned to appellee. Appellee admits that he did borrow $80 from appellant at one time, but says that when the automobile was purchased in 1934 this sum was used in part payment. This is not denied by appellant, and since the court ordered the automobile turned over to her, appellant has no complaint on this score. It is also suggested that the fee allowed to attorneys was inadequate, and that the services rendered justsify the allowance of more than double the fixed amount. The allowance was made directly to the attorneys to be recovered from the appellee. Appellant is not interested in this matter. The attorneys are not parties to the appeal. Neither did they, for themselves, take exception to the allowance or appeal from the judgment. Under this state of case, we cannot review the

alleged error. Thomas v. Thomas, 162 Ky. 630, 172 S. W. 1054; Bartlett v. Louisville Trust Co., 212 Ky. 13, 19, 277 S. W. 250; City of Richmond v. Durham, 260 Ky. 95, 83 S. W. (2d) 879.

For the reasons above indicated, we are of the opinion that the court below properly rendered judgment.

Judgment affirmed.