# Sabel v. Sabel.

April 25, 1941.

Leo J. Sandmann for appellant.

Lawrence Wetherby for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

This is the second appeal of this case, the former opinion being reported in 276 Ky. 644, 124 S. W. (2d) 792. An examination of that opinion shows that Mrs. Sabel was granted an absolute divorce, $2,500 permanent alimony, and periodic alimony of $25 per week for 250 weeks, and an allowance of $250 was made to her attorney. Because the chancellor permitted the defendant, Dan Sabel, to file a deposition taken before he filed answer, the judgment was reversed (except that part which granted Mrs. Sabel an absolute divorce) with directions that each party should be given a reasonable time to take proof on the questions of alimony and the settlement of property rights.

Upon the return of the case to the circuit court, the proof was limited to those issues as the former opinion directed. The chancellor adjudged Mr. Sabel should pay Mrs. Sabel a balance of $180 due upon a pendente

lite allowance; $750 permanent alimony; and $70 additional fee to her attorney. Mrs. Sabel prosecutes this appeal from that judgment.

At the time the divorce action was filed in May, 1936, Mrs. Sabel was 35 years of age and Mr. Sabel was 37. The family consisted of Mr. and Mrs. Sabel and her 17 year old son by a former marriage, who had taken Mr. Sabel's name. They were married in 1928 and lived in rather a luxurious manner until the fall of 1935, when the Red Cap Battery Manufacturing Company, which was operated by Mr. Sabel, failed. The Battery Company was sold by the bankruptcy court, and the home, which was deeded to Sabel and his wife jointly, worth about $10,000 with an indebtedness against it of some $4,500, was sold under foreclosure proceedings. Sabel's mother, Mrs. Barkhouse, whom the record shows to be worth between $300,000 and $400,000, purchased the battery business and the home. The former was incorporated with a capital stock of $20,000 with Mrs. Barkhouse subscribing to some $18,000 thereof, and Sabel became its president at a salary of $250 per month. The corporation was not a financial success and in 1937 Sabel's salary was reduced to $150, and in 1938 it was further reduced to $125, which is the salary he was receiving when proof was taken on the issues now before us.

Mrs. Sabel had no property when she and Mr. Sabel married and her interest in the home was acquired by virtue of her marriage. The order of distribution in the foreclosure action in which the home was sold shows there was $3,568.35 left after the indebtedness against the property was satisfied, of which sum $2,890 was held to satisfy Mrs. Sabel's claim for alimony. Sabel received $346.90 from the sale of his home. During the pendency of the divorce proceedings Sabel paid his wife a total of $3,025. In addition thereto, he paid her attorney a fee of $250, and the judgment from which Mrs. Sabel prosecutes this appeal directs that Sabel pay her $930 and her attorney an additional fee of $70, which makes a total of $4,275 he will have paid her and her attorney.

This record shows Sabel was not a success financially and we surmise if it had not been for the assistance of his rich mother he would not have been able to make a living. He has no property and is dependent for his

support upon a salary of $125 per month received from the Battery Corporation. This concern has not made money and would have long since failed except for the fact that Mrs. Barkhouse has furnished sufficient funds to keep it going.

Mrs. Sabel contends that Mr. Sabel transferred property to the corporation, but the proof shows he had no property to transfer to it outside of an automobile which he largely used in his business. He testified it was transferred because Mrs. Sabel sold a car belonging to the corporation which he had turned over to her for personal use and he was replacing the assets of the corporation. Practically all the capital stock is owned by his mother and it appears Sabel has treated the corporation as if it were his individual property. He has obtained his living therefrom rather than transferred to it any appreciable amount of property.

Sabel was the executor of an estate of his uncle, Henry Lieberman, and Mrs. Sabel contends he is entitled to a commission as such in the sum of $5,000 and that he received a bequest of $1,000 from the estate. He consumed this commission and bequest during his halcyon days when he and his family were living in luxury and there is now nothing due him from this estate.

Mrs. Sabel further argues that Mrs. Barkhouse has only two children, therefore Sabel's expectancy from his mother's estate is large and that under the case of Griffin v. Griffin, 154 Ky. 766, 159 S. W. 597, this expectancy should be considered in determining the amount of alimony to be allowed her. The Griffin case, following Muir v. Muir, 133 Ky. 125, 92 S. W. 314, 28 Ky. Law Rep. 1355, 4 L. R. A., N. S., 909, does hold that where a husband has no estate but is able to work and has an expectant inheritance, his probable earnings and probable inheritance may be taken in consideration in fixing the amount of alimony, although the wife may never realize upon the alimony judgment.

In arriving at the amount of alimony, courts have no fixed rule but consider the age, health, social position and earning capacity of both husband and wife; the conduct the parties have exhibited toward each other; the property the husband has accumulated, his income therefrom and his general ability to pay. Dodd v. Dodd, 278 Ky. 662, 129 S. W. (2d) 166; Lyon v. Lyon, 243 Ky.

236, 47 S. W. (2d) 1072; Emery v. Emery, 264 Ky. 331, 94 S. W. (2d) 634. Mrs. Sabel is not a strong woman, but she was employed in a doctor's office as a laboratory technician at the time she married Mr. Sabel, and since she has been granted a divorce she has obtained such a position in a hospital in Indiana which pays her $87 per month with room and board furnished. She testified it was necessary for her to have a room outside of the hospital at a cost of $14 per month. Her salary when her board is considered is almost as much as Sabel's.

Mrs. Sabel insists she should be allowed $300 per month permanent alimony on the theory it would take that much to support her in the manner she lived as Sabel's wife. Under no stretch of the imagination is he able to pay any such sum. Even in his prosperous days Sabel never earned more than $350 per month and the chances are the money consumed in operating an expensive household largely came from his mother. We think that in addition to the $750 permanent alimony and the $180 balance due on the pendente lite allowance, the chancellor should have allowed Mrs. Sabel $25 per month, subject to the further orders of the court. This monthly payment may be increased or decreased as the condition of either party may change, and the chancellor will retain jurisdiction of this case for such purpose. Sabel's present salary is $125 per month, his only property is $3,500 equity in his home and a vacant lot worth perhaps $300. As he has paid, or will pay, Mrs. Sabel and her attorney $4,375 and will continue to pay her $25 per month subject to the further orders of the chancellor, it is seen some consideration has been given his expected inheritance from his mother in fixing the alimony allowed Mrs. Sabel.

Mrs. Sabel's attorney complains in the brief of the smallness of the additional fee of $70 allowed him. But as the judgment provided this fee be paid directly to the attorney and as he is not a party to this appeal, we cannot consider the question of whether or not the chancellor erred in the amount of attorney's fee allowed, Woford v. Woford, 267 Ky. 787, 103 S. W. (2d) 296 and authorities therein cited.

The judgment is reversed for the entry of one consistent with this opinion.

Whole Court sitting, except Judge Tilford.