## Faulconer v. Faulconer et al.

June 25, 1948.

Strother Kiser for appellant.

King Swope for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Affirming in part, reversing in part.

This is a divorce action brought by the wife against the husband charging him with cruel and inhuman treatment and asking $5000 alimony. The divorce was not contested by the husband and the sole controversy between the parties is the amount of alimony to which the wife is entitled. Giving his reasons for his judgment in a well-considered written opinion, the chancellor granted the wife an absolute divorce, adjudged that she owned one-half of the home in which the title was taken in the parties jointly; granted her $1500 permanent alimony and gave her a savings account in which there was some $1100; directed the husband to pay her $75 per month and allowed her an attorney's fee of $200. The husband insists that this strips him of most of his property and in addition requires him to pay his divorced wife $75 per month out of his salary of $220.

The parties were married in 1915 and for a time lived on a farm where appellant was a tenant. During their comparatively early married life Mr. Faulconer gave up farming and entered business. This venture

was not a success and he took the bankrupt law. In the bankruptcy proceedings his wife filed claim to, and was allowed, $1700 of his assets as her individual property, which seems to have had its source in some livestock and poultry she owned while they were living on a farm.

After the bankruptcy proceedings Mr. and Mrs. Faulconer moved to Lexington and bought a home on Suburban Court for $4000. Mrs. Faulconer applied the $1700 she received from her husband's bankruptcy proceedings as a down payment on this home. Mr. Faulconer obtained employment with Fayette County and his salary for many years has been $220 per month. Out of this sum he handed $180 a month to his wife to bear the household expenses and he retained $40 a month to cover his personal expenses.

The Faulconers had three children, two boys and a girl. The eldest boy is married, as is the girl. The younger boy is now 23 years old and is in college and draws $65 a month as a veteran to defray his school expenses.

Mrs. Faulconer appears to be a frugal person and one who manages her finances well. Out of the $180 a month given her by her husband she not only maintained the family household and educated the three children, but was able to pay the remaining $2300 indebtedness on the home and in addition to that she accumulated about $2000 in a savings account in her name.

Things seem to have gone well with the family until recent years when Mr. Faulconer became addicted to drink and got interested in another woman. It cannot be doubted that he provided well for his family out of the means he had when he gave Mrs. Faulconer each month $180 of his salary of $220, retaining only $40 for himself. For a considerable period he gave her as much as $190 per month. Likewise, it cannot be doubted that Mrs. Faulconer stretched this sum to its utmost when she maintained the household, herself and three children on it, educated them, paid off an indebtedness of $2300 on the home and accumulated a savings account of approximately $2000.

Appellant attempts to question in a lame manner

the $1700 the bankruptcy court allowed Mrs. Faulconer, asserting that it came out of his assets. However, the bankruptcy court adjudged that sum to Mrs. Faulconer for her individual property which seems to have been reduced to cash in the settlement of the bankrupt's estate. Mr. Faulconer is in no position to question Mrs. Faulconer's ownership of this $1700 as he certainly has no claim to it. While it is far too late for any one to challenge the correctness of the ruling of the bankruptcy court, the only one who could complain of it would be a creditor.

The chancellor realized that Mr. Faulconer's money paid the balance of the purchase price on the home because he adjudged him a one-half undivided interest therein. The property was bought for $4000 and $1700 cash payment made by Mrs. Faulconer out of her own funds, when the interest on that sum is taken into consideration, about offsets the $2300 Mr. Faulconer paid in small monthly installments through his wife. We think the chancellor was correct in adjudging each of the parties to own a one-half interest in this home place which now has a value of about $8000.

There is no definite or fixed rule by which the amount of alimony may be judged. Courts generally take into consideration the age, social position, health and earning capacity of the parties, the amount of the husband's estate, his income and general ability to pay, and the conduct the parties have exhibited toward each other while they lived together. Sabel v. Sabel, 286 Ky. 575, 151 S. W. 2d 56, and authorities there cited.

Mr. Faulconer was liberal with his family according to his means, but this did not give him the right to indulge in the excessive use of intoxicants nor to philander with another woman. Perhaps if it had not been for the splendid management of Mrs. Faulconer, he would not now have a half interest in an $8000 home. Be that as it may, we are of the opinion that the chancellor made no error in allowing Mrs. Faulconer alimony in the lump sum of $1500. His adjudging a lien on Mr. Faulconer's half interest in the home does not divest him of the fee in real estate in contravention of KRS 403.060. Webster v. Webster, 269 Ky. 712, 108 S. W. 2d 724; Hamilton v. Hamilton, 298 Ky. 447, 183 S.

W. 2d 36. Nor did the chancellor err in allowing Mrs. Faulconer to retain the balance of the savings account, which we understand is now invested in war savings bonds in the amount of $1162.50, practically all of the rest of that account having gone for living expenses during the litigation and an operation for the daughter. It may be true that she attempted to cover up this savings account in a manner which does not redound to her credit, but she did a good job in accumulating it. This will increase her permanent alimony to around $2700, and considering the fact that she has no business training and is not possessed of any earning capacity in the commercial world, we cannot say this amount is out of line when all the circumstances presented by this record are considered.

But we think the chancellor erred when he fixed the sum at $75 per month Mr. Faulconer should pay Mrs. Faulconer out of his salary. In view of the fact that she was allowed permanent alimony in what amounts to $2700 and he is left with only his salary of $220 a month and a half interest in a $8000 home, upon which there is a $1500 lien, the monthly payment is reduced from $75 to $50. It is to Mrs. Faulconer's interest as well as his that this sum be kept in reasonable bounds, else he might be inclined to cease work and become a wanderer, drifting from place to place with no incentive to hold a position.

For the amount of work which this record shows was performed by appellee's counsel, it cannot be said with reason that the attorney fee of $200 allowed her was too much.

That part of the judgment is reversed which directs Mr. Faulconer to pay Mrs. Faulconer $75 per month and one will be entered reducing that sum to $50 per month.

The judgment is affirmed in part and reversed in part.