

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

January 21, 1958

Honorable D. C. Greer
State Highway Engineer
Texas Highway Department
Austin, Texas

Opinion No. WW-344

Re: The effect of Section 17, Arti-
cle I and Section 7a, Article
VIII of the Constitution of
Texas and your recent opinions
numbered WW-45; WW-78; WW-125
and WW-236 on whether or not
State and Federal Highway Funds
can be legally used by the State
Highway Department for the pay-
ment of the cost of removal, re-
location or adjustment of the
telephone facilities belonging
to Southwestern Bell Telephone
Company, the gas lines belong-
ing to Southern Union Gas Com-
pany and the water, electrical
and sanitary sewer facilities
belonging to the City of Austin
which are located within the
public right of way along East
Avenue and the streets which
intersect East Avenue in Austin,
Texas.

Dear Mr. Greer:

You have requested an opinion of this office concerning the
legality of the use of State and Federal Highway Funds for the pay-
ment of the cost of removal, relocation or adjustment of certain
utility facilities in connection with the construction of a section
of expressway in Austin, Texas. In connection with your request
you state:

"The expressway along East Avenue forms a part of
the National System of Interstate and Defense Highways,
and I would appreciate your advice, in view of Section
17, Article 1, and Section 7a of Article 8, of the Con-
stitution of Texas, and your recent opinions numbered
WW-45, WW-78, WW-125 and WW-236 on whether or not we
can legally use State and Federal Highway funds for the
payment of the cost of removal, relocation or adjustment

Honorable D. C. Greer, Page 2 (WW-344).

of the telephone facilities belonging to Southwestern
Bell Telephone Co., the gas lines belonging to Southern
Union Gas Co., and the water, electricity and sanitary
sewer facilities belonging to the City of Austin which
are located within the public right of way along East
Avenue and the streets which intersect East Avenue."

In addition your request also states:

"Plans for the construction of the last section
of the Expressway through Austin along East Avenue
are nearing completion and it is now apparent that the
utility facilities located within the limits of the
present streets must be adjusted, removed or relocated
to permit the full utilization of the right of way for
highway purposes. Specifically, the telephone facili-
ties belonging to Southwestern Bell Telephone Co., the
gas lines belonging to Southern Union Gas Co., and the
water, electricity and sanitary sewer facilities belong-
ing to the City of Austin must be adjusted, removed or
relocated.

"We are informed that the utility facilities be-
longing to the telephone and gas companies are lo-
cated in the right of way of the streets of Austin
under the authority of franchises granted by the City,
which, among other things, requires the companies to
adjust, remove or relocate their facilities at their
own expense should their use of the right of way inter-
fere or conflict with the use of such right of way by
the public for street purposes.

". . ."

This office in Attorney General's Opinion No. WW-236 (1957)
written to you on August 26, 1957, sets forth certain points of
law which we believe applicable and controlling in all cases of
this nature. We, therefore, call your attention to this former
opinion and wish to use it as a point of departure in what we say
below.

In accord with the holding in our Opinion No. WW-236, we
shall first undertake to determine if the utilities in question
are possessed of such rights as to come within the provisions of
Section 17 of Article I of the Constitution of Texas.

Section 17, Article I of the Constitution of Texas pro-
vides in part:

"No person's property shall be taken, damaged or
destroyed for or applied to public use without ade-
quate compensation being made, unless by the consent
of such person; . . ."

We shall analyze the rights of the private utilities first in as much as they both occupy their present locations within the public right of way by virtue of franchise from the City of Austin.

The Supreme Court of the United States has held that when a utility assumes the duty to perform a particular service under a franchise this constitutes a contract and vests in the accepting corporation or individual a property right which is to be protected by the Federal Constitution. Russell v. Sebastian, 233 U.S. 1955 (1913); Owensboro v. Cumberland Tel. Co., 230 U.S. 58 (1913); Boise Water Co. v. Boise City, 230 U.S. 84 (1912).

The Texas cases are in accord and hold that where a utility invests its money by placing its fixtures within the streets of a city and undertakes to supply the service required by the franchise, there is created a contract which results in the vesting of a property right, which, as such, is to be protected by the Constitution. City of Fort Worth v. Southwestern Bell Telephone Co., 80 Fed.2d 842 (CCA 5th, 1936); Texarkana Gas and Electric Co. v. City of Texarkana, 123 S.W. 213 (Tex. Civ. App. 1909, no writ history); Corpus Christi Gas Co. v. City of Corpus Christi, 283 S.W. 281 (Tex. App. 1926, error ref.).

It would further appear that regardless of whether the "right" involved be called an easement or a franchise, there is an element of proprietary interest involved which makes it taxable, alienable and transferable. Texas & Pac. Rwy. Co. v. City of El Paso, 126 Tex. 86, 85 S.W.2d 245 (1935); City of Ft. Worth v. Southwestern Bell Telephone Co., 80 Fed.2d 842 (CCA 5th, 1936).

It being a valuable right which has accrued to the utility involved, it naturally follows, we believe, that any relocation of facilities which results in a "taking" or "damaging" of this franchise or easement involves the "taking" or "damaging" of a compensable property right, which is properly to be protected by Section 17 of Article I, Constitution of Texas.

We believe, however, that a "taking" of this property right would only occur in those situations where the utility in question is required to remove its facilities from the right of way of a city street and to purchase an easement out of its own funds. Thus, if the relocation merely involves a moving of the facilities from one spot in the right of way to another spot in the right of way, and the utility in question is not deprived of its "easement" in the street, then there is in our opinion no "taking" of property so as to come within the well recognized provisions of eminent domain.

It also follows, we believe, that in as much as any compensable property right, which the utility might have, arises out of the franchise which was entered into between the utility and the City of Austin, the utility must be bound by the provisions of that franchise and if the utility is required to move its facilities under the provisions of the franchise, then it could certainly not be damaged within the meaning of the provisions of Section 17,

Article I of the Constitution of Texas. It is our opinion that House Bill No. 179 cannot abrogate the provisions of the franchise granted to the respective utilities.

It is also well to point out that the Courts have long held that private utilities occupy the space in a public street subject to the public uses of that street, and in making use of the street for that superior purpose, the public is not invading or injuring private property but is only appropriating that which it its own. City of San Antonio v. San Antonio Street Rwy. Co., 39 S.W. 136 (1896, writ ref.); New Orleans Gas Light Co. v. Drainage Commission of New Orleans, 197 U.S. 453 (1905); State v. Marin Municipal-County-District, 17 Cal.2d 706; 111 Pac.2d 651 (1941); Commonwealth v. Means & Russell Iron Co., 299 Ky. 465, 185 S.W.2d 960 (1945); Public Water Supply Dist. No. 2 of Jackson County v. State Highway Commission, ___ Mo. ___, 244 S.W.2d 7 (1951); City of N.Y. v. Hudson & M. R. Co., 229 N.Y. 141; 128 N.E. 152 (1926); 18 Am. Jur. 843, Eminent Domain, Section 212.

We, therefore, fail to see how the utility has been "damaged" as that term is used in Section 17, Article I of the Constitution of Texas, and as set forth above, we are also of the opinion that unless the private utility is forced to go outside of the right of way in question and purchase an easement for its facilities, then there is no "taking" of the utilities' property so as to come within the provisions of this section of the Constitution.

This being so, we are of the opinion that we must construe Section 4a of House Bill No. 179, Acts 55th Legislature, Regular Session, 1957, in the light of Section 51 of Article III of the Constitution of Texas. Attorney General's Opinion No. WW-236 (1957).

Section 51 of Article III prohibits the granting of public moneys to any individual, association of individuals, municipal or other corporations whatsoever. We believe that the use of funds as provided for in Section 4a, House Bill No. 179 is just such a grant of public moneys to corporations as is envisioned by this section of the Constitution, and as is pointed out in Attorney General's Opinion No. WW-236 (1957) if this be so, then by its own provisions Section 4a of House Bill No. 179, would prohibit the use of these funds for this purpose.

You have also requested the legality of the use of State and Federal Highway funds for the payment of the cost of removal, relocation or adjustment of the water, electricity and sanitary sewer facilities belonging to the City of Austin, which are relocated within the right of way along East Avenue and the streets which intersect East Avenue.

As in the case of privately owned utilities, we must first determine what compensable property right the municipally owned utility has acquired in the city streets. The Court, speaking in City of Mission v. Popplewell, 26 Tex. 91, 294 S.W.2d 712 (1956),

said:

"This Court has also held that the legal title to city streets belongs to the state, which has full control and authority over them, and the cities exercise only such control and authority as has been delegated to them by the Home Rule Amendment to the Texas Constitution, Art. II, S 5, or by the legislature. West v. City of Waco, 116 Tex. 472, 294 S.W. 832; City of San Antonio v. Fetzer, Tex. Civ. App., 241 S.W. 1034; 30A Tex. Jur. 434; 39 Tex. Jur. 603. In City of Beaumont v. Gulf States Utilities Co., Tex. Civ. App., 163 S.W.2d 426. (429 er. ref. w.o.m.), the Court of Civil Appeals quoted with approval from Mc-Quillin on Municipal Corporations, 2d Ed., par. 2902, page 12: '"Courts everywhere decline to recognize that the city possesses any property rights in the streets, although they may be a source of profit to the municipality. Their interest is exclusively public juris, and is in any respect wholly unlike property of the private corporation which is held for its own benefit and used for its private gain and advantage."'"

It is clear from this opinion that even as to streets located within the corporate limits of a given city, the city has no legal title and is limited to such control and authority as is delegated to it by the Constitution of Texas and the Legislature. This is true whether the city in question be a Home Rule City or not. City of Beaumont v. Gulf States Utilities Co., supra, p. 429.

In our opinion the above authority clearly indicates that under the laws of Texas an incorporated city, even though it be a Home Rule City, has no legal title to the streets within its corporate limits, and that where these streets have been designated a State Highway, they are subject to the control of the State Highway Commission. For this reason, it is logical to conclude that where the city utility is located within the designated right of way of a State Highway, the city does not automatically hold a compensable property right in any given portion of the street by virtue of the location of its utilities within the right of way, but rather occupies this space under authority of a right in the nature of a permissive user.

This is not to say, of course, that the facilities of a municipally owned utility cannot be said to occupy an "easement" within the city street just as does the privately owned utility merely because the city does not grant itself a franchise. As in the case of a privately owned utility, it does not follow that by placing fixtures within the right of way of a street the city has not thereby become vested with a property right of the same nature as that under consideration in Texarkana Gas and Electric Co. v. City of Texarkana, supra, and Corpus Christi Gas Co. v. City of Corpus Christi, supra.

It is, therefore, our opinion that where the City has placed its facilities within the right of way of a street, it has thereby become vested with a property right which is subject to compensation where there has been a "taking" or "damaging" of that right.

Likewise, we believe that just as in the case of a privately owned utility, if the municipally owned utility is required to remove its facilities from the right of way of the street and relocate them outside of that right of way, or if an easement, which the utility owns outside of the right of way, is encompassed, then there is a "taking" involved. In these cases payment under the provisions of Section 4a, House Bill No. 179, would be authorized.

However, if the municipally owned utility is only required to relocate from one spot in the right of way to another, there is no "taking", or "damaging" involved, and we believe the utility occupies any given location subject to the superior primary function of a street, that being the use by the public as a thoroughfare.

Therefore, the municipal utility may, we believe, be made to bear the cost of actually removing the facility from one given location in the right of way to another, for here there is no "taking" or "damaging" of the "easement" for the same reasons as have been previously pointed out in our discussion of private utilities. Assuming that there is no "taking" of or "damaging" a property right involved, we must next turn to the question of the granting of public moneys.

Section 51, Article III of the Constitution of Texas, as quoted above, prohibits the grant of public moneys to any municipal corporation. The Court, in Road District No. 4, Shelby County v. Allred, Attorney General, 123 Tex. 77, 68 S.W.2d 164 (1934); after setting out Section 51, Article III of the Constitution, held:

"... It is the settled law of this state that the above-quoted constitutional provision is intended to guard against and prohibit the granting or giving away of public money except for strictly governmental purposes. The prohibition is an absolute one, except as to the class exempted therefrom, and operates to prohibit the Legislature from making gratuitous donations to all kinds of corporations, private or public, municipal or political . . . ." (Emphasis ours)

It has been held that in operating water and electrical supply systems, the municipality is operating in its proprietary capacity. Crosbyton v. Texas-New Mexico Utility Co., 157 S.W.2d 418, (Tex. Civ. App. 1941, error ref.); Boiles v. Abilene, 276 S.W.2d 922, (Tex. Civ. App. 1955, error ref.); River Oaks v. Moore, 272 S.W.2d 389 (Tex. Civ. App. 1954 reh. den.). The operation of a sanitary sewer system has been held to be a governmental function. Gotcher v. Farmersville, 137 Tex. 12, 151 S.W.2d 565 (1941).

We believe that the holding of the Court in Road District

No. 4, Shelby County, v. Allred, supra, is controlling on this point, and are therefore of the opinion that unless there is a "taking" of the property right of the City of Austin in the public right of way involved in your request, the water and electrical facilities of the city, being a proprietary function, may not be adjusted, removed or relocated under the provisions of Section 4a of House Bill No. 179, Acts of the 55th Legislature, 1957.

Likewise, the holding in the Allred case will allow the use of State and Federal funds to pay for the cost of relocating the sanitary sewer facilities of the City of Austin located in the public right of way in question in as much as this function has been held to be a governmental function of a city.

The above holdings are in accord with and supported by the recent opinions of this office which you have mentioned in your request, to-wit, WW-45, WW-78, WW-125 and WW-236.

You have also requested our opinion as to the effect of Section 7a, Article VIII of the Constitution of Texas on the use of State and Federal Highway funds as provided for in Section 4a of House Bill No. 179, Acts 55th Legislature, Regular Session, 1957. This section provides in part:

> "Subject to legislative appropriation, allocation and direction, all net revenues remaining after payment of all refunds allowed by law and expenses of collection derived from motor vehicle registration fees, and all taxes, except gross production and ad valorem taxes, on motor fuels and lubricants used to propel motor vehicles over public roadways, shall be used for the sole purpose of acquiring rights-of-way, constructing, maintaining, and policing such public roadways, and for the administration of such laws as may be prescribed by the Legislature pertaining to the supervision of traffic and safety on such roads; . . ."

This section provides that the funds involved "shall be used for the sole purpose of acquiring rights-of-way, constructing, maintaining and policing" the public roadways of the State. Therefore, it is our opinion that in so far as this section might affect any funds to be used for the payment of relocation expenses under the provisions of Section 4a of House Bill No. 179, it clearly prohibits the use of funds for this purpose for the relocation of utility facilities does not fall within the purposes of acquiring rights-of-way, constructing, maintaining or policing of the public roadways.

We, therefore, are of the opinion that unless the relocation of the particular facilities in question involve a "taking" or "damaging", as we have construed these terms above, then the use of State and Federal Highway funds for the payment of the cost of removal, relocation or adjustment of the telephone facilities

Honorable D. C. Greer, Page 8(WW-344).

belonging to the Southwestern Bill Telephone Company, the gas lines belonging to Southern Union Gas Company and the water and electricity facilities belonging to the City of Austin which are located within the public right of way along East Avenue in the City of Austin is prohibited by the provisions of Section 4a of House Bill No. 179, Acts 55th Legislature, Regular Session, 1957. It also is our opinion that the sanitary sewer facilities belonging to the City of Austin may be removed under the provisions of Section 4a, House Bill No. 179, Acts 55th Legislature, R.S. 1957, even though there be no "taking" or "damaging" as we have defined those terms above.

## SUMMARY

Unless the relocation of the particular facilities in question involves a "taking" or "damaging" of a property right as we have construed these terms, then the use of State and Federal Highway funds for the payment of the cost of removal, relocation or adjustment of the telephone facilities belonging to Southwestern Bell Telephone Company, the gas lines belonging to Southern Union Gas Company, and the water and electricity facilities belonging to the City of Austin, which are located within the public right of way along East Avenue in the City of Austin, is prohibited by the provisions of Section 4a of House Bill No. 179, Acts 55th Legislature, Regular Session, 1957. Also the sanitary sewer facilities belonging to the City of Austin may be removed under the provisions of Section 4a, House Bill No. 179, Acts 55th Legislature, Regular Session, 1957, even though there be no "taking" or "damaging" as defined above.

Yours very truly,

WILL WILSON
Attorney General of Texas

By  *Wayland C. Rivers Jr.*

Wayland C. Rivers, Jr.
Assistant

WCR:ls

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman
Milton Richardson
Leonard Passmore
John Reeves

REVIEWED FOR THE ATTORNEY GENERAL
BY  W. V. Geppert