William E. PEARSON, Appellant,

v.

Ethel B. PEARSON, Appellee.

Court of Appeals of Kentucky.

March 24, 1961.

Rehearing Denied Nov. 3, 1961.

Shumate & Shumate, Thomas D. Shumate, Richmond, for appellant.

Chenault & Coy, James S. Chenault, Charles R. Coy, Richmond, for appellee.

STEWART, Judge.

This appeal by William E. Pearson is from that portion of the judgment entered which ordered him to restore $8,000 in cash to his ex-wife, Ethel B. Pearson, as her property, and which, in addition, directed him to pay her $13,000 as alimony.

Appellant, William E. Pearson, and appellee, Ethel B. Pearson, were married on December 26, 1925, and remained husband and wife until their separation on June 2, 1956. They have two children, a son, William E., Jr., who is married and a medical student in Louisville, and a daughter, Phyllis Ann, who is widowed and lives

with appellant at the family home at Waco in Madison County.

On August 2, 1956, appellee filed suit for divorce from appellant alleging cruel and inhuman treatment and asking for $32,500 lump sum alimony. On August 4th appellee moved for $50 per week as maintenance pendente lite. The sum of $200 per month for the wife's temporary support was ordered but was later reduced to $150 per month. On August 7, 1956, appellant counterclaimed for divorce on the ground of cruel and inhuman treatment. By amended complaint, appellee sought restoration of property in the sum of $24,000.

On June 6, 1958, judgment was entered granting appellee a divorce from appellant and further adjudging that she recover from him $1,650 unpaid pendente lite monthly payments, $8,000 as restoration of money earned and contributed by her for the furnishing, upkeep and maintenance of the home and family, and $13,000 as lump sum alimony. These amounts, plus the court costs and the fees of appellee's attorneys of $1,000, were ordered secured by a lien on appellant's real estate. The real estate described in this suit was adjudged to be solely the property of appellant, subject to the lien. The parties were ordered to restore to each other such other property which either may have obtained directly or indirectly from or through the other during marriage, in consideration of or by reason thereof.

Appellant's first argument for reversal is that appellee failed to prove any grounds for a divorce against him and therefore the court was without authority under the evidence presented to award alimony against him. He further urges that he was entitled to an absolute divorce on his counterclaim.

■ The trial court found that appellant habitually behaved toward appellee in such a cruel and inhuman manner as to indicate a settled aversion to her or to destroy permanently her peace and happiness, while appellee was found "guilty of some nagging, most of which was justifiable." There is some evidence to uphold these findings of fact; and, under CR 52.01, since such findings are not clearly erroneous under the facts presented, this Court cannot justifiably make new "findings for the purpose of reversing the alimony award." Wells v. Wells, Ky., 293 S.W.2d 718, 719.

■ Even if appellee had failed to prove that she was entitled to the divorce and appellant's counterclaim had prevailed, this fact alone would not deprive her of her claim of alimony. Luke v. Luke, 276 Ky. 683, 125 S.W.2d 251. The right to alimony is based upon the principle that the husband has a duty to maintain his wife; and, if the wife is not wholly at fault and not morally delinquent, she may be entitled to alimony, although the husband is granted the divorce. Sharp v. Sharp, 302 Ky. 426, 194 S.W.2d 835; Muth v. Muth, 314 Ky. 531, 236 S.W.2d 469; Coleman v. Coleman, Ky., 269 S.W.2d 730. In this case there is no evidence that appellee was wholly at fault or morally delinquent. Therefore, the chancellor could without abuse of his discretion grant her alimony.

Appellant further contends that since, except for certain articles of furniture, appellee admits that none of her earnings or property were invested in any of the property owned by him, the chancellor patently erred in adjudging appellee $8,000 as restoration of her property.

Both of the parties were school teachers at the time they were married and appellee has continued to teach, except for a few years, to the present time, earning in excess of $300 per month. Appellant, on the other hand, taught school almost continuously until he became superintendent of the Madison County schools. By reason of a change in the personnel of the board of education of Madison County, he was replaced as superintendent sometime during the year of 1954 and since that time has devoted his time exclusively to farming. According to his testimony he now earns from $1,000

to $1,500 each year from the farming operations.

The chancellor found as a fact that appellee now owns personalty valued at no more than $1,200 and no real estate; that, however, her earnings were largely spent for furniture for the home, for necessities for the family, for upkeep of the home and for rearing and educating the children. The chancellor concluded she should be repaid a portion of her earnings, in the sum of $8,000, which she used for the purposes mentioned. The chancellor also ordered the parties to restore to each other such specific articles of property as either may have obtained during the marriage and in consideration thereof.

KRS 403.065 deals with property restoration in divorce cases. It reads, in part: "Every judgment for a divorce from the bond of matrimony shall contain an order restoring any property not disposed of at the commencement of the action, which either party may have obtained, directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof; and any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage * * *."

█ As stated in appellant's brief, and as borne out by the cases cited by both parties, the right to restoration of property is based solely upon the fact that one spouse has invested earnings or money, or something else of a valuable consideration, in the property the other spouse owns at the time of the divorce.

In the present case appellee, who maintained a separate deposit of her own earnings in the bank while at the same time, by appellant's leave, wrote checks against his bank account and charged items against his credit in stores, admits she did not invest any of her earnings or money in any of the property owned by him (except for a few household items, which appellant concedes appellee bought and which he

stands ready to turn over to her). The evidence also reveals that appellee bought most of her own clothes, paid part of her medical expenses, and spent some of her money on Christmas and birthday presents for her husband and family. It was also established that appellant amply provided for his family's needs and sent both the children born to them through college at his sole expense.

Appellee cites the cases of Patterson v. Patterson, Ky., 266 S.W.2d 91, wherein the husband owned a telephone service for which the wife kept all the books, operated the switchboard, and trained relief operators, and Wells v. Wells, Ky., 293 S.W.2d 718, wherein the wife contributed substantial sums of her own money to be used by the husband in the operation of his business, as support for the restoration to her of $8,000. Actually, in the Patterson case the wife worked continuously and contributed her services in helping to create a business, which was afterwards sold and the proceeds of this business were invested in certain property, a portion of which was adjudged to be restored to her. In the Wells case, the wife invested her individual funds in her husband's business and her money so invested, which was found to have totaled $18,000, was ordered restored to her. Obviously these two cases are not analogous to the one before us.

█ In the present case appellee did not at any time turn over to appellant any of her separate estate or invest any of her own money in any of the property appellant now owns. True enough, on occasions she bought groceries for family use, clothing for herself and for the children, and also purchased other expendable items. By reason of these expenditures, however, she acquired no interest in appellant's property. The undisputed evidence in this case affords no basis for restoring to appellee any property or any specific sum of money, because it was conclusively shown appellant paid the entire consideration for the property to which he now has title. See Johnson

v. Johnson, Ky., 255 S.W.2d 610; Eckhoff v. Eckhoff, Ky., 247 S.W.2d 374; West v. West, 229 Ky. 125, 16 S.W.2d 781; Duke v. Duke, 198 Ky. 173, 248 S.W. 500; Dunn v. Dunn, 183 Ky. 841, 210 S.W. 943; Anheier v. De Long, 164 Ky. 694, 176 S.W. 195, Ann.Cas.1917A, 1239. The property accumulated by appellant that resulted during the marriage, and its value, was, as shown hereinafter, taken into consideration in awarding alimony. See Fain v. Minge, 241 Ky. 131, 43 S.W.2d 504.

We conclude that portion of the judgment which ordered the restoration of $8,000 in money to appellee out of appellant's estate, and gave a lien upon appellant's property to secure payment of this amount, is clearly erroneous.

Appellant next insists the amount granted unto appellee as alimony was grossly excessive. The chancellor found appellant owned the following property valued at the figure opposite each item:

| | |
|---|---|
| House and lots | $12,000 |
| 170-acre Blanton Farm | 28,000 |
| 260-acre Wells Farm | 24,000 |
| Personalty | 6,500 |
| Total Gross Estate | 70,500 |
| Less Total Debts | 15,000 |
| Total Net Estate | $55,500 |

The chancellor also found that appellant had a six-acre tobacco base, had in 1956 received $3,685.35 as his share for the sale of the tobacco crop, and had sold approximately $12,000 worth of livestock in January, 1957, making his gross income that one year reach $15,685.35.

Appellant appraised his estate as follows:

| | |
|---|---|
| Lots | $1,550 |
| House at $8,000 or | 9,000 |
| 170-acre Blanton Farm | 14,620 |
| 260-acre Wells Farm | 14,000 |
| Personalty | 5,500 |
| Total Gross Estate | 44,670 |
| Less Debts | 23,260 |
| Net Estate | $21,410 |

The lots were purchased for $1,550 and are probably worth that now. The house cost $6,500, according to the cancelled check, but probably has increased some in value since it was bought in 1946. The Blanton Farm was acquired in 1937 at $43 per acre. Appellant claims it is now worth $86 per acre. An adjoining tract was subdivided and sold in 1948 at prices ranging from $33 to $117 per acre. Another farm in the neighborhood, of the same character and quality as appellant's, was sold at auction in 1956 at $75 per acre but was resold at auction in 1957 at only $65 per acre.

One neighboring landowner appraised the Blanton Farm at $95 to $100 per acre, while another appraised it at $100 per acre. One of appellee's witnesses estimated its value at $200 per acre, while admitting in the same breath that there was very little difference between appellant's farm and the one near by that sold for $65 per acre in 1957. The other witness for appellee also placed the value of the land at $200 per acre, giving no basis for such an opinion. The chancellor found the value of this farm to be $164 per acre, and gave no explanation for this estimate.

As to the Wells Farm, appellant's witnesses placed its value at $45 to $50 per acre. Appellant set a valuation on each acre of $50. Appellee's two witnesses placed its value at $85 and $90 per acre. The chancellor found the value of this farm to be $2 more per acre than the highest estimate made by a witness of appellee's. The findings of fact are silent as to how the chancellor arrived at such an estimate.

Having valued the assets in the manner mentioned, the chancellor found appellant's debts amounted to $15,000, of which $3,000 was owed to appellant's daughter who lives with him. Appellant testified, and his testimony was not denied, that he owed a total of $23,260. No reason is advanced in the chancellor's finding to support his

conclusion that the $15,000 figure is the correct one.

■ Viewing this case as a whole it appears that, in order to arrive at the amount of alimony appellant should pay, the chancellor in his findings of fact raised the value of appellant's assets and at the same time lowered the sum total of his liabilities, without adequate evidentiary support. However, under the evidence presented the majority of this Court concludes the award of $13,000 as alimony to appellee is a just one and should stand. The writer of this opinion believes the award is excessive when the peculiar circumstances of this case are considered. At any rate it must be said that appellant was placed in an unfair position by the method used in determining his net worth for the purpose of assessing alimony.

Wherefore, the judgment is affirmed in so far as it awarded appellee $13,000 as alimony and reversed to the extent that it granted her $8,000 in money by way of restoration.